Hand-Delivered



FILED
CHARLOTTE, NC

APR 1 0 2023

US DISTRICT COURT
WESTERN DISTRICT OF NC

# IN THE UNITED STATES DISTRICT COURT FOR

# THE WESTERN DISTRICT OF NORTH CAROLINA

## CASE #: 3:23-cv-202-RJC

MARC HUBBARD

      Plaintiff,

      v.

MARC A WALLENSTEIN, WILLIAM A
HARRISON; LESLIE E. OSBOURNE JR.; SEAN
BARRIERO; FLORENCE T. NAKAKUNI;
LAWERENCE L. TONG; MARION PERCELL
and UNKNOWN FEDERAL AGENTS JOHN DOES
1-10

      Defendants.

**CIVIL COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1.    This is a civil action for damages and injunctive relief under 42 U.S.C. § 1983,

    42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1988(b), and the common law of the

    State of North Carolina.

    Defendants, individually and in concert, maliciously conspired to bring charges of

wire fraud against Marc Hubbard. Defendants knew that these charges were completely and utterly unsupported by probable cause, and a total fabrication, The Hawaii Federal Prosecutors office conspired with Sean Barriero and William Harrison to convict Marc Hubbard of these baseless charges. In their rush to accuse, Defendants willfully ignored and were deliberately indifferent to overwhelming evidence of Plaintiffs' actual innocence.

Defendants set about to fabricate evidence. Defendants conspired to conceal exculpatory evidence to charge and convict the Plaintiff on "facts" they knew to be untrue. Defendants' actions evidenced a reckless and callous disregard for and deliberate indifference to Plaintiff' constitutional rights and Defendants' responsibilities to the criminal justice system.

2.   As a result of Defendants' actions, Plaintiff has suffered deprivations of the rights guaranteed to him under the Fourth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 19 of the North Carolina Constitution; he has suffered economic, emotional, and physical harm; he has suffered irreparable harm to his reputation; lost his business, lost his property and he has incurred massive legal fees defending himself against criminal prosecutions that the Defendants knew were baseless.

## PARTIES

### The Plaintiff

3.      Plaintiff Marc Hubbard is a citizen and resident of North Carolina.

### The Defendants

#### 1.      The Assistant United States Attorneys Defendants

4.      Defendant Marc Wallenstein was, always relevant to this action, the AUSA for the United States District of Hawaii. Between 2014 and 2018, Wallenstein also directed the US Government's factual investigation of the allegations regarding Mr. Hubbard. In 2022, Mr. Wallenstein became a subject of investigation by the Office of Disciplinary Counsel for the State of Hawaii regarding the same conduct alleged in this complaint. (See Exhibit A) Upon information and belief, Wallenstein is a citizen and resident of Chicago.

5.      Defendant Leslie E. Osbourne Jr. was, always relevant to this action, the AUSA for the United States District of Hawaii. Between 2012 and 2014, Osbourne also directed the US Government's factual investigation of the allegations regarding Mr. Hubbard. Upon information and belief, Osbourne is, and has been always relevant to this action, a citizen and resident of Hawaii.

#### a.      The Supervisory Defendants

6.     Defendant Florence T. Nakakuni was, always relevant to this action. the United States Attorney for the District of Hawaii. In that capacity, Nakakuni served in a supervisory and/or policymaking role for the United States Attorney's office for the District of Hawaii. Upon information and belief, Nakakuni is, and has been always relevant to this action, a citizen and resident of Hawaii.

7.     Defendant Lawerence L. Tong is and was, always relevant to this action. the Chief, Fraud and Financial Crimes Section supervisor. In that capacity, Tong served in a supervisory and/or policymaking role for the United States Attorney's office for the District of Hawaii. Upon information and belief, Tong is, and has been always relevant to this action, a citizen and resident of Hawaii.

8.     Defendant Marion Percell is and was, always relevant to this action. the Chief of Appeals supervisor. In that capacity, Percell served in a supervisory and/or policymaking role for the United States Attorney's office for the District of Hawaii. Upon information and belief, Percell is, and has been always relevant to this action, a citizen and resident of Hawaii.

9.     Defendants Nakakuni, Tong, and Percell are referred to collectively herein as the "Supervisory Defendants."

**b.  The Diversity Defendants**

10.    Upon information and belief, Defendant Harrison is, and has been always relevant to this action, a citizen and resident of Hawaii. In 2022, Mr. Harrison became a

subject of investigation by the Office of Disciplinary Counsel for the State of Hawaii regarding the same conduct alleged in this complaint. (See Exhibit B)

11.   Upon information and belief, Defendant Barriero is, and has been always relevant to this action, a citizen and resident of Florida.

## JURISDICTION AND VENUE

12.   This action arises under the Fourth and Fourteenth Amendments to the Constitution of the United States; Article I, Section 19, of the North Carolina State Constitution; 42 U.S.C. § 1983; 42 U.S.C. § 1985; 42 U.S.C. § 1986; 42 U.S.C. Plaintiff's claims against all Government employee defendants are brought under the auspices of *Bivens*.

13.   This Court has original jurisdiction over Plaintiff' constitutional and federal law claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a), 28 U.S.C. § 1391(e) and 28 U.S.C. §1332 diversity jurisdiction.

14.   This Court has supplemental jurisdiction over Plaintiff' state law claims pursuant to 28 U.S.C. § 1367(a) because they are part of the same case and controversy

described by Plaintiff' federal claims, and independent original jurisdiction over Plaintiff' state law claims pursuant to 28 U.S.C. § 1332 because this action is between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Plaintiff is seeking $30,000,000.00 in compensatory and $30,000,000.00 in punitive damages.

15. Venue is proper in the Western District of North Carolina pursuant to 28 U.S.C. § 1391(e)(1) (c), because Plaintiff resides in Charlotte, NC.

## FACTUAL ALLEGATIONS

16. On or about 3/12/12 the University of Hawaii began working with Robert Peyton to plan a benefit concert starring Stevie Wonder. Mr. Peyton contracted with Helen Williams and Sean Barreiro to produce the concert. On 5/30/12 TU wired $50,000.00 to Sean Barreiro. On 6/26/12 the University of Hawaii wired $200,000.00 to Sean Barreiro. The concert did not happen, and an investigation began. Mr. Barreiro never spoke to TU and spoke with officials from the University of Hawaii for the first time on 7/16/12. Mr. Barreiro then began working for the FBI by secretly recording phone calls without a warrant and then altering the content before submitting him to his handler at the FBI.

17. On or about 8/23/12, Upon information and belief, Defendants participated in the investigation of the case and Osborne received a copy of an internal investigation report into the events related to the Stevie Wonder Concert. (See Exhibit C) This report

detailed interviews with many University of Hawaii employees. This evidence completely exonerated Mr. Hubbard as to having any role in the failed concert. The report established the fact that Robert Peyton was the only person to have any interaction with the University prior to the money being sent. Furthermore, the investigation was clear that the University participated in this transaction because Robert Peyton misrepresented the fact that insurance was active in reference to the transaction and if the show didn't happen for any reason the University would be reimbursed. The University never inquired as to the methodology that Mr. Peyton was using to secure the concert, The University viewed Mr. Peyton as a professional and trusted him to either deliver the show or reimburse them from the insurance proceeds. This arrangement was approved by the State AG prior to any money being released. The Defendants were aware of these facts, yet willfully ignored and/or were deliberately indifferent to this evidence demonstrating Plaintiff' innocence in their rush to charge an innocent man.

18. Upon information and belief, the Supervisory Defendants also were aware of these facts, yet willfully ignored and/or were deliberately indifferent or grossly negligent with respect to this evidence demonstrating Plaintiff' innocence in their rush to charge the Plaintiff.

19. To spite direct knowledge that UH sent the wire transfer based on the fact the money

was insured and that Mr. Hubbard made no materially false misrepresentations to the victims, Defendants presented false information to the Grand jury to obtain an indictment. The criminal action commenced on or about November 7, 2012 for wire fraud, in the United States District Court for the District of Hawaii (the "Criminal Action")(Exhibit D). Defendants conspired and acted to conceal and obfuscate the report, knowing that if those results came to light, it would prevent an indictment or conviction of Mr. Hubbard. Indeed, the intended and actual effect of this conspiracy was to facilitate an indictment and prosecution of Mr. Hubbard, while concealing by omission the report which established Plaintiff' actual innocence. The Government does not contest that Hubbard himself did not make any materially false misrepresentations to the victims.

20. On or about January 2013. Robert Peyton, the only person to ever speak to the University of Hawaii of TU prior to the money being sent died of natural causes. As a result, the United States Attorneys of for the District of Hawaii began working with the Philadelphia United States Attorney's office to bail them out of this unjust prosecution as detailed in an email from the FBI to Sean Barreiro.

21. After a 3 year delay, On 8/3/15, the Plaintiff forced William Harrison to file a motion to dismiss the indictment. Upon information and belief, Defendant Wallenstein and Harrison began working together as a team to convict Mr. Hubbard due to Mr. Harrison's conflict and the high-profile nature of the case . Mr. Harrison withdrew the

Motion to dismiss on 8/31/15 and began assisting Wallenstein in formulating a new

indictment against Mr. Hubbard. Due to the fact, the death of Mr. Peyton made it

legally impossible to prosecute Mr. Hubbard because Peyton was the only person to

ever communication with the victims prior to any money being sent. Wallenstein

presented a new indictment to the Grand Jury on 12/29/15. (Exhibit E) He lied to the

Grand Jury by presenting an indictment that stated Mr. Barreiro communicated with

the victims prior to the money being sent. Mr. Harrison was silent about this

fabrication and participated in the conspiracy by convincing Mr. Hubbard that the court

in its discretion refused to hear the motion to dismiss.

22. On 1/7/15, Mr. Hubbard was arraigned. During the arraignment, Mr. Harrison

misrepresents to the court that Mr. Hubbard was sent a copy of the indictment. In

addition, Mr. Wallenstein creates a ruse to justify the second indictment by pretending

the indictment was based upon new information.

23. Wallenstein and Harrison allowed the case to drag on for years while working with the

Prosecutors in Philadelphia to bail them out by indicting Mr. Hubbard in that

jurisdiction to pressure him into pleading guilty in Hawaii. The prosecution refers to

the Philadelphia case constantly throughout the Hawaii case. The prosecutor even goes

as far as to send Mr. Hubbard an email stating that if he doesn't plead guilty in Hawaii,

he will use his influence with the Prosecutor in Philadelphia and the judges in both

jurisdictions to ensure that Mr. Hubbard would receive a consecutive sentence and be

detained in Philadelphia in an attempt to intimidate and threaten Mr. Hubbard into

leading guilty and not exercising his right afforded to him by the Constitution. (Exhibit F)

24.     Harrison pressured Hubbard into pleading guilty. Harrison in his sworn deposition states that "Mr. Hubbard was not from this community and would surely be subject to both expect and implicit bias." In realty Mr. Harrison informed Mr. Hubbard that "the US Attorney's office knows how to deal with niggers from the mainland and your only shot at not getting a 10 year sentence is to plead guilty. The US Attorney's office targets Niggers everyday. The fact that you are innocent has nothing to do with it. You are in Hawaii my friend.."

25.     In the plea agreement, Wallenstein lies about Barreiro communicating with the University prior to money being sent. It is an undisputed fact that the University wired the money on June 23, 2012 but Mr. Barriero never communicates with anyone from the University until July 9, 2012. This is confirmed in the indictment. Wallenstein was aware of this fact. (Exhibit G)

26.     Wallenstein conspired with Harrison to get Hubbard to plead guilty.

27.     Mr. Hubbard after he realized that he had been tricked, instructed Mr. Harrison to withdraw the plea in June 2017. Mr. Hubbard was unaware but the conspirators met

and the liars had counsel. Specifically, Hubbard emailed Harrison stating (Exhibit H)..."*I wanted to address some issues with you. When are we going to withdraw my guilty plea? Today is 2/15/18 and if I am not mistaken the Judge is planning on having a sentencing hearing next week. I talked to you via phone on 1/30/18 and you told me that you were sending over a draft of an affidavit to withdraw my plea on 1/31/18. I never received anything. I texted you on 2/1/18, 2/6/18, 2/11/18, 2/12/18 and 2/14/18 all texts were unresponded to. I am starting to get paranoid and my spidey sense is starting to tingle. I understand why you couldn't withdraw my plea when I informed you in 6/2017 but I can see in my crystal ball that if we continue to wait until the eve of sentencing to withdraw my plea then the Judge is gonna deny my motion saying it is a delay tactic and will say if I wanted to withdraw my plea then why did I wait to the last minute. Let me be clear, I have no intention of participating in the crucifixion part 2. I want to submit a formal motion to withdraw my plea that addresses the following point: 1. The plea was coerced, 2. I am actually innocent of these bullshit charges and 3. Sean has submitted false documents to the court trying to frame me. I want to include multiple exhibits that illustrate my need to withdraw the plea. I also want to participate and see the motion prior to it being filed. If there is something going on behind the scenes, you can honestly tell me. When I told you that you were my friend, I meant it and nothing will change that...*" Mr Hubbard professes his friendship towards Mr. Harrison having no idea how correct he was about the conspiracy and treason that was afoot. Harrison goes back and reports to Wallenstein that he can no longer control Mr. Hubbard and they had to do something drastic to defuse this

situation. Thus, Wallenstein directed Tim Simon from the FBI to kidnap Mr Hubbard from his cell handcuffed and shackled late at night. Hubbard was transported to the Government Office after all the employees had left for the day. The Prosecutor, the FBI and Mr. Harrison then threatened and pressured him for hours with guns visible to go along with the process and be convicted. Mr. Hubbard was afraid for his life. (Exhibit I) Hubbard remembered the assessment by Mr. Harrison that the United States Attorney Office knows how to deal with Niggers from the mainland. At that point, Mr. Hubbard viewed his chances of being returned safely to the detention facility at 50/50.

28. After the conviction Hubbard learned about the conspiracy against him. He filed the appropriate Motions however the Government and Mr. Harrison continued to conspire by protecting each other. When Wallenstein filed a response in the court of appeals, he purposely lied and stated that Hubbard stated in the transcript that he lied about being in contact with Stevie Wonder's management when the transcript clearly says Hubbard stated in the transcript that he lied about being in contact with Hubbard's management. A reading of the original transcript confirms that this is not true. (See Exhibit J + K) This misstatement is significant because Hubbard Management is not listed anywhere in the indictment. This is the only misrepresentation Hubbard admits to in the Rule 11 hearing. Wallenstein violated Hubbard's civil rights, conspired with Mr. Harrison, lied to the court, and obstructed Justice. This was done because Mr. Hubbard is black.

29. The Government in their initial response even lies about being present in plea conferences with Mr. Hubbard and Mr. Harrison to confirm Mr. Harrison's lies that he never told Mr. Hubbard that if he pleaded guilty, he would be guaranteed a concurrent sentence. (Exhibit L)

**FIRST CAUSE OF ACTION:**
**MALICIOUS PROSECUTION AND SEIZURE IN VIOLATION OF 42**
**U.S.C. § 1983**

(Against Wallenstein and Osbourne in their individual capacities)

30. Plaintiff incorporate paragraphs 1-28 above.

31. Wallenstein and Osbourne are "persons," as that term is used in the text of 42 U.S.C. § 1983.

32. Under color of law, Wallenstein and Osbourne, acting individually and in concert, initiated and continued criminal prosecutions against the Plaintiff on charges of Wire fraud.

33. There was no probable cause for any of the criminal prosecutions of the Plaintiff.

34. The criminal prosecutions, Count 1 of the Original Indictment dated 11/7/2012 and Count 2 of the Superseding Indictment dated 12/29/15 terminated in favor of the Plaintiff pursuit to Thompson v. Clark , 142 S. Ct. 1332.

35. Wallenstein and Osbourne's actions were malicious and evidenced a reckless and callous disregard for, and deliberate indifference to Plaintiffs'

constitutional rights.

36.     As result of these wrongful prosecutions, Plaintiff was seized and deprived of his

        rights under the Fourth and Fourteenth Amendments to the United States

        Constitution.

37.     As a direct and foreseeable consequence of these deprivations, Plaintiff has

        suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of

        privacy, loss of property, loss of business and irreparable harm to his reputation.

38.     As a further consequence of these deprivations, Plaintiff was required to retain

        counsel to represent him in the criminal proceedings pursued against him, and

        incurred expenses associated with defending against the unlawful criminal

        proceedings initiated and sustained by Defendants.

## SECOND CAUSE OF ACTION:
## CONCEALMENT OF EVIDENCE IN VIOLATION OF 42 U.S.C. § 1983

### (Against Wallenstein, Osbourne, Harrison and Barriero in their individual capacities)

39.     Plaintiff incorporate paragraphs 1-37 above.

40.     Wallenstein, Osbourne, Harrison and Barriero are "persons," as that term is used

        in the text of 42 U.S.C. § 1983.

41.     Under color of law, Wallenstein, Osbourne, Harrison and Barriero, acting

        individually and in concert, concealed evidence of Plaintiff' actual innocence.

42.     Wallenstein, Osbourne, Harrison, and Barreiro's actions evidenced a reckless and

        callous disregard for, and deliberate indifference to, Plaintiff constitutional rights.

43.   As a result of these Defendants' conduct, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

44.   As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

45.   As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in criminal proceedings pursued against him, and incurred expenses associated with defending against the criminal proceedings initiated and sustained by Defendants.

### THIRD CAUSE OF ACTION:
### FABRICATION OF FALSE EVIDENCE IN VIOLATION OF 42 U.S.C. § 1983

(Against Wallenstein, Osbourne and Harrison in their individual capacities)

46.   Plaintiff incorporate paragraphs 1-44 above.

47.   Wallenstein, Osbourne, and Harrison are "persons," as that term is used in the text of 42 U.S.C. § 1983.

48.   Acting under color of law, Wallenstein, Osbourne, and Harrison individually and in concert, conspired to produce a false and misleading indictments to the Grand Jury and Documentation to the Court they understood and agreed would be falsely misrepresented and that would be used in the criminal proceeding instituted against Plaintiff.

49.   Wallenstein, Osbourne, and Harrison's actions evidenced a reckless and callous

disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

50. As a result of Defendants' conduct, the Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

51. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

52. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

## FOURTH CAUSE OF ACTION:

### VIOLATIONS OF 42 U.S.C. § 1983 (*MONELL V. DEP'T OF SOCIAL SERVS.*, 436 U.S. 658 (1977))

(Against the Supervisory Defendants in their official capacities, Osborne and Wallenstein in their official capacity)

53. Plaintiff incorporate the allegations made in paragraphs 1-51 above.

54. Wallenstein, Osborne, the Supervisory Defendants, are "persons," as that term is used in the text of 42 U.S.C. § 1983.

    **A.  Officials with Final Policymaking Authority for United States Attorney's office Approved the Unconstitutional Conduct of Their Subordinates.**

55.     Upon information and belief, the Supervisory Defendants having final policymaking authority for the US Attorney's Office District of Hawaii had contemporaneous knowledge through the chain of command that Wallenstein and Osborne were manipulating evidence and presenting it to the Grand Jury and the Court, in violation of constitutional standards, intimidating witnesses, concealing evidence of Plaintiff' innocence, fabricating false evidence, and making false to use against the Plaintiff.

56.     It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of Plaintiff' constitutional rights.

57.     Upon information and belief, the Supervisory Defendants nevertheless agreed to, approved, and ratified this unconstitutional conduct by Wallenstein and Osborne.

58.     As a direct and foreseeable consequence of these policy decisions, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.


**B.      The United States Attorney's Office for the District of Hawaii Had an Established Policy or Custom Targeting Blacks and people not from the Island for Harassment Through Selective and Improper Enforcement of the Criminal Laws.**

59.     Upon information and belief, the Supervisory Defendants and other officials in the United States Attorney's Office for the District of Hawaii established a policy or custom encouraging FBI officers to target Blacks and people not from the Island for selective enforcement of the criminal laws.

60.     It would have been plainly obvious to a reasonable policymaker that such conduct

would lead to deprivations of Plaintiff' constitutional rights. Indeed, upon information and belief, the Supervisory Defendants were aware that Osborne and Wallenstein had attempted to effectuate this policy by engaging in selective and malicious prosecution, excessive use of force, manufacturing of false evidence, and filing of false reports against Blacks and people not from the Island, yet they consistently failed to take adequate or meaningful steps to discipline Osborne or Wallenstein, correct their behavior, or terminate their employment.

61. As a direct and foreseeable consequence of this policy decision, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### C. After Being Given Final Policymaking Authority over the FBI Investigation, Wallenstein Directed Officers to Engage in Constitutional Violations.

62. On or about October 10, 2015, the Supervisory Defendants and other officials with final policymaking authority in the US Attorney Office agreed that Wallenstein would assist and direct the FBI investigation into the allegations of Wire fraud against Mr. Hubbard.

63. By agreeing that Wallenstein would direct the investigation, and by instructing FBI personnel to take direction from Wallenstein instead of the usual chain of command, the Supervisory Defendants, delegated to Wallenstein final policymaking authority

over the investigative procedures implemented by the FBI personnel involved in the investigation.

64.    Acting in this capacity, Wallenstein used his delegated authority to implement a series of investigative policies and actions that included, among other things, conspiracy with Harrison to prevent a hearing on the Motion to Dismiss that was filed on August 3rd, get information from Harrison as to the exact testimony of Mr. Hubbard and travel to Florida to meet face to face with Mr. Barreiro to direct him as to what evidence needed to be manufactured to convict Hubbard.

65.    Wallenstein implemented these policies and actions with knowledge or deliberate indifference to the likelihood that he would result in violations of Plaintiff' constitutional rights.

66.    Upon information and belief, the Supervisory Defendants nevertheless ratified these investigative policies and actions implemented by Wallenstein.

67.    As a direct and foreseeable consequence of these investigative policies and actions, Plaintiff was deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

68.    As a direct and foreseeable consequence of each of the foregoing constitutional deprivations caused by policymaking officials, customs and practices, and policies in the United States Attorney's Office for the District of Hawaii, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

69.  As a further consequence of these deprivations, Plaintiff was required to retain

counsel to represent him in the criminal proceedings pursued against him, and

incurred expenses associated with defending against the unlawful criminal

proceedings initiated and sustained by Defendants.

## FIFTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1983

(Against Wallenstein in his individual and official capacity; Osbourne in his official and
individual capacities; the Supervisory Defendants, in their individual and official capacities,
Harrison in his individual capacity and Barriero in his individual capacity)

70.  Plaintiff incorporate the allegations made in paragraphs 1-68 above.

Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants are
"persons," as that term is used in the text of 42 U.S.C. § 1983.

71.  Under color of law, Wallenstein, Osbourne, Harrison, Barriero, and the

Supervisory Defendants conspired and entered into express and/or implied

agreements, understandings, or meetings of the minds among themselves to

deprive Plaintiff of his constitutional rights by charging and prosecuting the

Plaintiff which these Defendants knew were not supported by probable cause.

72.  The Supervisory Defendants willfully participated in this illegal objective by

various means, with the intent to further some purpose of the conspiracy,

including, for example:

   a.   publishing false and inflammatory public statements regarding

        Plaintiff;

   b.   manufacturing evidence;

c.  entering into the conspiracy to fabricate and conceal exculpatory evidence;

d.  intimidating defense witnesses, specifically Mr. Hubbard.

e.  Orchestrating the kidnapping of Mr. Hubbard

f.  agreeing to make false and materially incomplete statements to the grand juries that returned the November 2012 and December 2015 Indictments;

g.  fabricating additional false evidence after the Indictments, such as statements that Mr. Barriero communicated with the victims prior to the money being sent and because of Mr. Barreiro's representations money was sent

h.  making false statements to the Court of Appeals to conceal the unlawful conspiracy.

i.  Using their influence with the Philadelphia US Attorney's office to get Mr. Hubbard charged in that jurisdiction to bail the US Attorney's Office in Hawaii out of the prosecution of an innocent man. The FBI sends an email to Barriero from a non FBI email address to prevent discovery on Oct. 11, 2013 stating.. *"Philly is silent. I don't think we can count on them to bail us out".* (Exhibit M)

73.  Wallenstein, Osbourne, Harrison, Barriero, and the Supervisory Defendants' actions evidenced a reckless and callous disregard for, and deliberate indifference

to, Plaintiff' constitutional rights.

74. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

75. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

76. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

### SIXTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(2)
### (OBSTRUCTION OF JUSTICE)

(Against Wallenstein in his individual and official capacity; Osbourne in his official and individual capacities; the Supervisory Defendants, in their individual and official capacities, Harrison in his individual capacity and Barriero in his individual capacity)

77. Plaintiff incorporate the allegations made in paragraphs 1-75 above.

78. Wallenstein, Osbourne, Harrison, Barriero and the Supervisory

Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1985.

Under color of state law, Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of

impeding, hindering, obstructing and defeating the due course of justice in the State of North Carolina, with the intent to deny Plaintiff the equal protection of the laws.

79. Wallenstein, Osbourne, Harrison, Barriero, the Supervisory Defendants, actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff' constitutional rights.

80. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

81. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

82. As a further consequence of these deprivations, Plaintiff was required to retain counsel to represent him in the criminal proceedings pursued against him, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.


### SEVENTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(2)
### (WITNESS TAMPERING)

(Against Wallenstein in his individual capacity and in his official capacity and the Supervisory Defendants in their individual and official capacities)

83. Plaintiff incorporate the allegations made in paragraphs 1-81 above.

84. Wallenstein and the Supervisory Defendants are "persons," as that term is used in 42 U.S.C. § 1985.

85. Under color of state law, Wallenstein, and the Supervisory Defendants, conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of deterring Mr. Hubbard from going to trial and later withdrawing his plea. Wallenstein -by force, kidnapping, intimidation, and threat from testifying freely, fully, and truthfully to matters that these Defendants knew were, or would be, pending therein.

86. Wallenstein, and the Supervisory Defendants actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff' constitutional rights.

87. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.


88. As a direct and foreseeable consequence of these deprivations, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

89. As a further consequence of these deprivations, Plaintiff were required to retain counsel to represent him in the criminal proceedings pursued against him, and

incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

### EIGHTH CAUSE OF ACTION:
### CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985(3)

(Against Wallenstein in his individual and official capacity; Osbourne in his official and individual capacities; the Supervisory Defendants, in their individual and official capacities, Harrison in his individual capacity and Barriero in his individual capacity)

90. Plaintiff incorporate the allegations made in paragraphs 1-88 above.

Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants are "persons," as that term is used in the text of 42 U.S.C. § 1985.

91. Under color of state law, Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants conspired and entered into express and/or implied agreements, understandings, or meetings of the minds among themselves for the purpose of depriving, either directly or indirectly, Plaintiff of the equal protection of the laws and of their equal privileges and immunities under the laws.

92. Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiff' constitutional rights.

93. As a direct and foreseeable consequence of this conspiracy, Plaintiff was deprived of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

94.     As a direct and foreseeable consequence of these deprivations, Plaintiff has

        suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of

        privacy, loss of property, loss of business and irreparable harm to their reputation.

95.     As a further consequence of these deprivations, Plaintiff was required to retain

        counsel to represent him in the criminal proceedings pursued against him, and

        incurred expenses associated with defending against the unlawful criminal

        proceedings initiated and sustained by Defendants.

### NINTH CAUSE OF ACTION:
### MALICIOUS PROSECUTION AND CONSPIRACY

(Against Wallenstein in his individual and official capacity; Osbourne his individual and
official capacities)

96.     Plaintiff incorporate the allegations made in paragraphs 1-94 above.


97.     Beginning in November 2012, Wallenstein and Osbourne, acting individually and

        in concert, instituted or participated in the institution of criminal proceedings

        against Plaintiff.

98.     These proceedings were not supported by probable cause and were terminated in

        Plaintiff' favor.

99.     Wallenstein and Osbourne, demonstrated malice, spite, ill-will, and wanton disregard

        for Plaintiff' rights by conspiring to manufacture and by manufacturing false and

        misleading indictments with the knowledge that these indictments would be used to

        advance and perpetuate the criminal process against Plaintiff.

100. Wallenstein and Osbourne, further demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff' rights by attempting to hide exculpatory evidence rather than disclosing information to the Plaintiff.

Wallenstein demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff' rights by intimidating the Plaintiff into pleading guilty via a threatening email and directing the FBI to kidnap Mr. Hubbard in the middle of the night and take him to the Federal Building to be threatened for hours..

101. As a direct and foreseeable consequence of Defendants' conduct, Plaintiff was unreasonably and unlawfully subjected to indictment and criminal prosecution.

102. As a direct and foreseeable consequence of being subjected to prosecution, Plaintiff has suffered economic loss, physical harm, emotional trauma, loss of liberty, loss of privacy, loss of property, loss of business and irreparable harm to his reputation.

103. As a further consequence of being subjected to prosecution, Plaintiff was required to retain counsel to represent him in protracted criminal proceedings, and incurred expenses associated with defending against the unlawful criminal proceedings initiated and sustained by Defendants.

### TENTH CAUSE OF ACTION:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND CONSPIRACY

(Against Wallenstein in his individual and official capacity; Osbourne in his official and individual capacities; the Supervisory Defendants, in their individual and official capacities, Harrison in his individual capacity and Barriero in his individual capacity)

104. Plaintiff incorporate the allegations made in paragraphs 1-102 above.

105. Wallenstein, Osbourne, Harrison, Barreiro and the Supervisory Defendants acted individually and in concert to manufacture inculpatory evidence and to conceal exculpatory evidence for the purpose of perpetuating a criminal action against Plaintiff falsely charging him with Wire Fraud —charges that were calculated to shame, to humiliate, and to produce public condemnation of the Plaintiff.

106. Wallenstein, Osbourne, Harrison, Barreiro and the Supervisory Defendants repeatedly made false, insulting, offensive, and inflammatory statements about Plaintiff calculated to shame, to humiliate, and to produce public condemnation of the Plaintiff.

107. Wallenstein, Osbourne, Harrison, Barriero and the Supervisory Defendants acting individually and in concert, intimidated witnesses and manipulated the Court with the intention of perpetuating criminal proceedings against Plaintiff.

108. In combination with conduct described above, these actions evidenced a pattern of extreme and outrageous behavior pursued with the intent to cause Plaintiff to suffer severe emotional distress.


109. Defendants' conduct had the direct and foreseeable consequence of marking Plaintiff as a criminal in the minds of millions of people.

110. Despite Plaintiff' exoneration, Defendants' conduct will continue to have deleterious effects on Plaintiff, who will forever be associated with the false allegations advanced by Defendants and repeatedly publicized.

111. As a result of Defendants' intentional and outrageous conduct, Plaintiff has suffered and continue to suffer from emotional and mental conditions generally recognized and diagnosed by trained professionals.

112. As a direct and foreseeable consequence of those conditions, Plaintiff has suffered, and continue to suffer, disabling emotional, mental, and physical harm.

## PRAYER FOR RELIEF

113. WHEREFORE, to redress the injuries proximately and directly caused by Defendants' conduct as stated in Paragraphs 1-111 above, Plaintiff hereby request the following relief:

  i. On all Causes of Action, compensatory damages in the amount of $30,000,000.00 or an amount to be proven at trial.

  ii. Punitive damages in an amount of $30,000,000.00 or an amount to be proven at trial.

  iii. Attorneys' fees, costs, and the expenses related to this action; and

  iv. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Marc Hubbard

By: _____

Marc Hubbard
Pro Se
2010 St. Paul Street
Charlotte, NC 28216
(704) 492-8401
marchubbard83@gmail.com