## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:23-CV-00202-RJC-SCR

| | |
|---|---|
| **MARC HUBBARD,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**MARC A. WALLENSTEIN, et. al.,**<br><br>**Defendants.** | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Defendants' Motions to Dismiss (Doc. Nos. 17, 21 & 23), as well as the parties' briefs and exhibits. (Doc. Nos. 18, 22, 24, 27, 29, 30, 32, 33, 35, 36, 37 & 38).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motions are now ripe for the Court's consideration.

For the reasons set forth below, the undersigned respectfully recommends that the Federal Defendants' Motion to Dismiss (Doc. No. 17) and Defendant Harrison's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 21) be <u>granted</u>. The undersigned further respectfully recommends that Defendant Harrison's Motion to Dismiss for Insufficient Service of Process (Doc. No. 23) be <u>denied as moot</u>.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

<u>Pro se</u> Plaintiff initiated this lawsuit against Defendants following his prosecution, guilty plea, and subsequent judgment in the United States District Court for the District of Hawaii. (Am. Compl., Doc. No. 12 at 2-3; Doc. No. 12-1, Ex. E). The Amended Complaint asserts claims against two Assistant United States Attorneys ("AUSA") involved in his prosecution (Wallenstein and

Osbourne[1]), three individuals acting in a "supervisory and/or policymaking" capacity for the U.S. Attorney's Office (Nakakuni, Tong and Percell), Plaintiff's defense attorney in Hawaii (Harrison), and Plaintiff's former business associate and co-defendant (Barriero).  (Doc. No. 12 ¶¶ 4-11).

Underlying Plaintiff's claims are the events surrounding the failed production of a fundraising concert at the University of Hawaii in 2012.  Id. ¶ 16; (Doc. No. 18 at 10).  Plaintiff attaches various exhibits to his Amended Complaint, including the original Indictment from November 7, 2012, and the First Superseding Indictment from December 29, 2015.  (Doc. No. 12-1, Exs. E at 62 & G at 72).  The First Superseding Indictment charged Plaintiff with two counts of wire fraud related to Plaintiff's involvement with the failed concert.  Id., Ex. G at 79.  Plaintiff later pled guilty to the second count.  Id., Ex. B & Ex. G at 79, ¶ 9.

Now, Plaintiff alleges that Defendants, "individually and in concert, maliciously conspired to bring charges of wire fraud" against Plaintiff.  (Doc. No. 12 ¶ 1).  Specifically, Plaintiff brings claims alleging Constitutional torts under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (Causes of Action One – Five and Eleven), violations of 42 U.S.C. § 1985 (Causes of Action Six – Eight), malicious prosecution (Cause of Action Nine), and intentional infliction of emotion distress (IEED) (Cause of Action Ten).  Id. ¶¶ 26-113.

"Federal Defendants" (Wallenstein, Nakakuni, Tong, Percell, the Estate of Osborne, and the United States) filed a "Motion to Dismiss" under Fed. R. Civ. P. 12(b)(1), (2), (5) and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and failure to state a claim, among other things.  (Doc. Nos. 17 & 18).  Defendant Harrison also filed

---

[1]The Amended Complaint clarifies that as Defendant Osbourne has died, his estate will be sued in his place.  (Doc. No. 12 ¶ 5).  The Court makes no findings on whether the process followed by Plaintiff to substitute the Estate as the party Defendant was legally sufficient.

two motions, a "Motion to Dismiss for Lack of Personal Jurisdiction" (Doc. Nos. 21 & 22) and a "Motion to Dismiss for Insufficient Service of Process." (Doc. Nos. 23 & 24).

## II.    <u>DISCUSSION</u>

### A. Standard of Review

Plaintiff is <u>pro se</u> and accordingly his Complaint will be liberally construed. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam). While mindful of the latitude extended to <u>pro se</u> litigants, courts cannot act as the <u>pro se</u> plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of his complaint. <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1152 (4th Cir. 1978).

### 1. Subject Matter Jurisdiction

Federal Courts are courts of limited jurisdiction. <u>See U.S. ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir. 2009) (citing <u>Exxon Mobile Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005)). "Before a court can rule on any other issue, 'questions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case.'" <u>Brown v. Brown</u>, No. 3:23-CV-00230-FDW-SCR, 2023 WL 6367669, at *3 (W.D.N.C. Sep. 29, 2023) (quoting <u>Owens-Illinois, Inc. v. Meade</u>, 186 F.3d 435, 442 n.4 (4th Cir. 1999)). "The plaintiff has the burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.</u>, 166 F.3d 642 (4th Cir. 1999) (citing <u>Richmond, Fredericksburg & Potomac R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991)).

### 2. Personal Jurisdiction

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction." <u>Combs v. Bakker</u>, 886 F.2d 673,

676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶ 12.07[2.2]).  In cases where "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge."  Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); see also Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014).  "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction."  Combs, 886 F.2d at 676; see also Universal Leather, LLC, 773 F.3d at 558.  However, courts need not assume the truth of allegations in a pleading which are contradicted by affidavit.  Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished table decision).

### 3. Insufficient Service of Process under Rule 12(b)(5)

A motion to dismiss under Rule 12(b)(5) "challenge[s] the sufficiency of service of process[,]" including a defect in the service or lack of delivery.  Richardson v. Roberts, 355 F. Supp. 3d 367, 370 (E.D.N.C. 2019); see also, 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004).  Once the sufficiency of process or service of process is challenged by a motion to dismiss, Plaintiff must establish that process was sufficient and service of process was effectuated in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Scott v. Md. State Dep't of Labor, 673 F. App'x 299, 304 (4th Cir. 2016) (per curiam) (citing Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010)); Elkins v. Broome, 213 F.R.D. 273, 276 (M.D.N.C. 2003).

**B. Sovereign Immunity for Federal Defendants as to Causes of Action One, Two, Three, Four, Five, Six, Seven, Eight, and Eleven – Official Capacity**

Plaintiff's official capacity claims (Causes of Action One, Two, Three, Four, Five, Six, Seven, Eight, and Eleven)[2] against the Federal Defendants fail because they are barred by sovereign immunity. Plaintiff's Complaint sues two federal prosecutors involved in his prosecution and three others working in a supervisory capacity in the U.S. Attorney's Office. The gravamen of Plaintiff's complaint stems from his prosecution and guilty plea to the second count of wire fraud in the First Superseding Indictment. Plaintiff appealed and the Ninth Circuit Court of Appeals dismissed Plaintiff's appeal on October 28, 2019. United States v. Hubbard, 782 F. App'x 641, 642-43 (9th Cir. 2019). On November 24, 2020, Plaintiff filed a Motion to Vacate His Conviction and Sentence pursuant to 28 U.S.C. § 2255, and on April 18, 2023, the U.S. District Court for the District of Hawaii denied his Motion. United States v. Hubbard, No. 1:12-cr-01133-LEK (D. Haw.) (Doc. Nos. 348 & 406). On November 17, 2023, the Ninth Circuit also denied his appeal. United States v. Hubbard, No. 23-15762, (9th Cir. Nov. 17, 2023).

Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit, and the United States has not waived sovereign immunity to be sued under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and for Bivens claims. F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature. Indeed, the 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.'" Id. (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)); Keys v. Crick, 6:16-cv-3167, 2016 WL 6993974, at *3 (D.S.C. Oct. 14, 2016) ("Sovereign immunity deprives a court of jurisdiction.") (citing

---

[2] Plaintiff's Complaint states Counts One, Two, and Three are brought against certain Federal Defendants only in their individual capacities. (Doc. No. 12 at 12-14). However, construing Plaintiff's pro se Complaint liberally, to the extent the allegations in Plaintiff's Complaint attempt to bring Counts One, Two, or Three against the Federal Defendants in their official capacities, the Court addresses those claims herein.

Global Mail Ltd. v. United States Postal Service, 142 F. 3d 208, 210 (4th Cir. 1998)); United States v. Jones, 225 F. 3d 468, 469 (4th Cir. 2000), cert. denied, 532 U.S. 1053 (2001)).  Here, the Federal Defendants in their Official Capacity have not consented to be sued and courts routinely find such claims under analogous circumstances are barred by sovereign immunity.  Keys, 2016 WL 6993974, at *3 (finding under similar facts sovereign immunity barred suit against federal prosecutors) (citing Harlow v. Fitzgerald, 457 U.S. 800, 814-820, n. 30 (1982) and Farmer v. Brennan, 511 U.S. 825, 839 (1994)), R & R Adopted, 2016 WL 6962806 (Nov. 29, 2016); Doe v. Chao, 306 F. 3d 170, 184 (4th Cir. 2002) ("[A] Bivens action does not lie against . . . officials in their official capacity"); Randall v. United States, 95 F. 3d 339, 345 (4th Cir. 1996) (same); Fuqua v. Turner, 996 F.3d 1140, 1156-57 (11th Cir. 2021) (dismissing Bivens claims and 42 U.S.C. § 1985 claim against federal officers in their official-capacity based on sovereign immunity and noting "[n]or is a § 1985(3) claim cognizable as an official-capacity claim."); Davis v. U.S. Dep't of Justice, 204 F.3d 723, 726 (7th Cir. 2000) ("Sovereign immunity, however, bars §§ 1985(3) and 1986 suits brought against the United States and its officers acting in their official capacity."); Reynolds v. United States Gov't, No. 7:22-CV-178-FL, 2023 WL 5826901, at *24 (E.D.N.C. July 21, 2023), Mem. & R. adopted, 2023 WL 5350566 (E.D.N.C. Aug. 21, 2023) (recommending dismissal of 42 U.S.C. § 1985 claim because "circuit courts routinely hold that federal actors may not be sued under §§ 1985 or 1986 in their official capacities."); Sykes v. United States, 507 Fed. App'x 455, 462 (6th Cir. 2012) (dismissing constitutional claims for damages against the United States and federal defendants in their official capacities because the "United States has not waived its sovereign immunity in suits for money damages because of alleged constitutional violations.").

As a result, the undersigned respectfully recommends that the Motion to Dismiss be granted as to Causes of Action One, Two, Three, Four, Five, Six, Seven, Eight, and Eleven applying to Federal Defendants in their official capacity.

### C. Lack of Subject Matter Jurisdiction as to Causes of Action Nine and Ten – Official Capacity

The Federal Defendants bring a Motion to Dismiss under Rule 12(b)(1) as to Plaintiff's malicious prosecution and IIED claims, arguing that Plaintiff has not properly exhausted administrative remedies under the Federal Tort Claims Act ("FTCA").  (Doc. No. 18 at 9).  The Federal Defendants maintain that a failure to exhaust administrative remedies would deprive the Court of subject matter jurisdiction over these claims.  Id.

The United States is immune from all suits against it absent an express waiver of its immunity.  Estate of Van Emburgh ex rel Van Emburgh v. United States, 95 F.4th 795, 800 (4th Cir. 2024) (quoting Welch v. United States, 409 F.3d 646, 650 (4th Cir. 2005)).  Because the torts of malicious prosecution and IIED are common law causes of action, the only waiver of sovereign immunity is the FTCA.  Specifically, "[t]he FTCA provides a waiver of sovereign immunity for damages suits related to certain actions by federal employees that occur within the scope of their employment."  Id. (citing 28 U.S.C. §§ 1346(b)(1), 2674).  "When filing suit under the FTCA, plaintiffs must satisfy certain jurisdictional prerequisites," including the administrative exhaustion requirement.  Id. (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)).  The administrative exhaustion requirement has three elements: (1) the plaintiff must present his claim to the appropriate Federal agency; (2) when the plaintiff presents his claim to the agency, the plaintiff must state the sum he is seeking for his claim; and (3) the plaintiff must wait either for the claim to be finally denied by the agency or for the agency to fail to make final disposition of the claim within six months after it is filed.  Id. at 801 (quoting 28 U.S.C. § 2675).  In this Circuit,

these three statutory requirements are jurisdictional.  Id. ("Further, each of these three statutory requirements is jurisdictional." (citing McNeil v. United States, 508 U.S. 106, 111-13 (1993)). "Thus, the first question in evaluating whether subject matter jurisdiction exists is whether Plaintiff[] satisfied these three requirements."  Id.; see also Anderson v. United States, No. 3:23-cv-00657-MOC-DCK, 2024 WL 871381 (W.D.N.C. Feb. 29, 2024).[3]

Plaintiff appears to have filed an administrative tort claim on April 5, 2023, which was received on April 10, 2023.  (Doc. No. 18, Ex. E).  Plaintiff provides no evidence to suggest that his administrative claim had been denied prior to commencing this action.  Nor does Plaintiff demonstrate that more than six months passed without a final disposition of the claim before filing this action.  In fact, as the Federal Defendants note, this jurisdictional requirement would have been impossible to satisfy because Plaintiff filed his original Complaint on April 10, 2023, the same day his administrative claim was received.  (Doc. Nos. 1; 18 at 27); Plyler v. United States, 900 F. 2d 41, 42 (4th Cir. 1990) ("Since the district court had no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the motion to dismiss until the requisite period had expired."); Hinojosa v. United States Bureau of Prisons, 506 Fed. App'x 280, 282-83 (5th Cir. 2013) (concluding the district court lacked jurisdiction where plaintiff did not meet administrative exhaustion requirements because "such jurisdiction must exist *at the time of filing*" even if administrative claim had become exhausted "since the time of filing the complaint."

---

[3] In the Title VII context, courts have held that the failure to exhaust administrative remedies is a procedural question, not a jurisdictional one, and therefore should be evaluated under Rule 12(b)(6) rather than Rule 12(b)(1).  Fed. R. Civ. P. 12(b)(1), 12(b)(6); See Fort Bend Cnty., Tex. V. Davis, 139, S. Ct. 1843 (2019) (finding Title VII's charge-filing requirement to be non-jurisdictional); Stewart v. Iancu, 912 F.3d 693, 701-02 (4th Cir. 2019) (finding that Title VII's 180-day waiting period is non-jurisdictional); Cunningham v. Wells Fargo, N.A., No. 3:19-CV-00528-FDW, 2020 WL 5300843 (W.D.N.C. Sept. 4, 2020) (stating "motions to dismiss for failure to exhaust administrative remedies are analyzed under Rule 12(b)(6) rather than 12(b)(1)" in a Title VII case).  However, at least at this point, this Circuit still recognizes the exhaustion of administrative remedies under the FTCA as a jurisdictional question.  See Estate of Van Emburgh ex rel Van Emburgh, 95 F.4th at 800.  Regardless of the standard applied, the undersigned finds the result is the same, that dismissal is required.

(emphasis in original)).  Therefore, Plaintiff failed to exhaust administrative remedies as required under § 2675 and this Court lacks jurisdiction over his malicious prosecution and IIED claims.

Accordingly, the undersigned respectfully recommends that the Federal Defendants' Motion as to Plaintiff's Causes of Action Nine and Ten in their official capacity be <u>granted</u>.

### D.  Lack of Personal Jurisdiction over Federal Defendants - Individual Capacity

In this case, the Federal Defendants also move to dismiss under Rule 12(b)(2) the claims that Plaintiff brings against the Federal Defendants in their individual capacity (Causes of Action One, Two, Three, Five, Six, Seven, Eight, Nine, Ten, and Eleven).  (Am. Compl., Doc. No. 12; Doc. No. 17).

"It is axiomatic that, in order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied.  First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements."  <u>Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan</u>, 259 F.3d 209, 215 (4th Cir. 2001) (citing <u>Stover v. O'Connell Assocs. Inc.</u>, 84 F.3d 132, 134 (4th Cir. 1996)).  "North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, governs the reach of federal courts in North Carolina over out-of-state defendants, subject to the federal constitutional constraints of the Due Process Clause of the Fourteenth Amendment on the state's application of its long-arm statute."  <u>True Homes LLC v. Clayton Homes, Inc.</u>, No. 3:18-CV-000345-KDB-DCK, 2020 WL 6528861, at *11 (W.D.N.C. Nov. 5, 2020).  "Courts have long held . . . that North Carolina's long-arm statute extends to the maximum boundaries allowed by the Due Process Clause."  <u>Id.</u> (citing <u>English & Smith v. Metzger</u>, 901 F.2d 36, 38 (4th Cir. 1990)); <u>see also</u> <u>Universal Leather, LLC</u>, 773 F.3d at 558; <u>Ctr. for Cmty. Self-Help v. Self-Fin., Inc.</u>, No. 1:21-CV-862, 2023 WL 1779831, at *2

(M.D.N.C. Feb. 6, 2023) (citing Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (N.C. 1977)).

North Carolina's long-arm statute provides, inter alia, "for jurisdiction over any validly served—defendant who 'is engaged in substantial activity within [North Carolina], see N.C. Gen. Stat. § 1-75.4(1)(d), or whose act or omission gave rise to the action claiming injury to person or property in North Carolina, see N.C. Gen. Stat. § 1-75.4(3)." Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist, 259 F.3d at 215. "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); see also UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009)).

Under the Due Process Clause, a court can have personal jurisdiction over a defendant in either of two ways: (1) "general personal jurisdiction over a defendant who has continuous and systematic contacts with the forum state regardless of whether the relevant conduct occurs," or (2) "specific personal jurisdiction, which requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state." Wall Recycling, LLC v. 3TEK Glob., LLC, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020) (quoting Pan-Am. Prod. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 677 (M.D.N.C. 2011)); ALS Scan, Inc. v. Digit. Serv. Consultants, Inc. 293 F.3d 707, 711-12 (4th Cir. 2002).

Plaintiff barely attempts to establish personal jurisdiction over any of the Defendants. (Am. Compl., Doc. No. 12). Plaintiff's entire theory of personal jurisdiction is premised on his "arrest" in North Carolina on "bogus charges initiated by the Defendants." Id. ¶ 12. Plaintiff acknowledges

that Defendants "were not present in North Carolina" but alleges they are "liable for their subordinates' acts and/or as co-conspirators with those who allegedly did act in North Carolina." (Doc. No. 27 at 57). Specifically, Plaintiff alleges that his arrest in North Carolina was a "Tortuous [sic] Act" that subjects the Federal Defendants to personal jurisdiction in North Carolina under the theory of conspiracy jurisdiction. (Am. Compl., Doc. No. 12); Unspam Techs., Inc. v. Chernuk, 716 F.3d 322 (4th Cir. 2013). These arguments, however, fail.

General jurisdiction over the Federal Defendants could not be exercised. The conduct complained of by Plaintiff occurred in the District of Hawaii. None of the Federal Defendants are residents of North Carolina, and they have no "continuous and systematic contacts" with North Carolina. Plaintiff does not even attempt to argue otherwise. The question then becomes whether specific jurisdiction exists.

A court may exercise specific jurisdiction when "the defendant has purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985); Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (noting that as compared to general jurisdiction, specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims."); Int'l Shoe Co., 326 U.S. at 319.

The Fourth Circuit evaluates the following factors to determine whether the exercise of specific jurisdiction is appropriate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claim[] arise[s] out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc., 963 F.3d at 351-52 (quoting Consulting Eng'rs Corp., 561 F.3d at 278); Perdue Foods LLC v. BRF S.A., 814 F.3d

185, 189 (4th Cir. 2016) (quoting <u>ALS Scan, Inc.</u>, 293 F.3d at 712); <u>dmarcian, Inc. v. dmarcian Eur. BV</u>, 60 F.4th 119, 133 (4th Cir. 2023).

As to this first prong, purposeful availment, courts require that the defendant create a "substantial connection" with the forum by "deliberately" engaging in activities with the forum state or by creating "continuing obligations" with the forum state's residents. <u>Burger King Corp.</u>, 471 U.S. at 475-76. This requirement ensures that a defendant will not be subject to jurisdiction based on "random," "fortuitous," or "attenuated" contacts with the forum or the "unilateral activity of another party or a third person." <u>Id.</u> at 475.

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." <u>Consulting Eng'rs Corp.</u>, 561 F.3d at 278-79. Under this prong, courts consider the "effects test" such that personal jurisdiction is proper when "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 398 n.7 (4th Cir. 2003) (citing <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 265-66 (3d Cir. 1988)).

In considering the third prong of specific personal jurisdiction, constitutional reasonableness, courts "ensure the appropriateness of the forum." <u>Consulting Eng'rs Corp.</u>, 561 F.3d at 279. Courts consider factors including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

<u>Id.</u>

Plaintiff bears the burden of establishing personal jurisdiction over the Federal Defendants and has failed to do so here. Plaintiff's Amended Complaint is devoid of any allegations that the Federal Defendants had purposefully availed themselves to North Carolina. Plaintiff also does not assert that any individual Federal Defendant, acting in their individual capacity, actually took part in the arrest of Plaintiff that occurred in North Carolina.

Plaintiff cites Columbia Briargate Co. v. First Nat'l Bank in Dallas, stating that "the commission of a single tortious act within the forum state is sufficient" and asserting that "[t]he Tortuous [sic] Act in this case is the arrest in North Carolina." (Am. Compl., Doc. No. 12 at 6, ¶ 12 (citing Columbia Briargate Co., 713 F.2d 1052, 1057 (4th Cir. 1983)). Even applying the "effects" test, Plaintiff's argument is without merit. It could not be said that Federal Defendants expressly aimed any alleged tortious conduct at North Carolina when the underlying focal point of this case entirely involves the District of Hawaii—not North Carolina.

Plaintiff also cites to two cases, McLaughlin v. McPhail, 707 F.2d 800, 806-807 (4th Cir. 1983) and Gemini Enters., Inc. v. WFMY Television Corp., 470 F. Supp. at 559, 564-65 (M.D.N.C. 1979) in an attempt to assert the "conspiracy theory of personal jurisdiction." McLaughlin is an appeal from a bankruptcy case in the District of Maryland, and far from endorsing the "conspiracy theory of jurisdiction," the Fourth Circuit affirmed, among other things, the district court's denial of plaintiff's motion to compel testimony from out-of-state defendants under the "conspiracy theory." 707 F.2d at 806-07. Also, Gemini did not hold the conspiracy theory of jurisdiction to be a proper basis, but instead describes what might be considered. The court indicated that "the mere presence of a conspirator within the forum state is not sufficient to permit personal jurisdiction over co-conspirators." Gemini Enters., Inc., 470 F. Supp. at 564. However, the court observed that "certain additional connections between the conspiracy and the

forum state" may support exercise of jurisdiction over co-conspirators. <u>Id.</u> "These additional connections exist where substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that acts would be performed in the forum state." <u>Id.</u>; <u>see also</u> <u>Unspam Techs., Inc. v. Chernuk</u>, 716 F.3d 322, 329 (4th Cir. 2013); <u>Lolavar v. de Santibanes</u>, 430 F.3d 221, 229-30 (4th Cir. 2005).

Only Plaintiff Hubbard resides in North Carolina. The Federal Defendants have little to no connection with North Carolina. Further, courts have held that obtaining an arrest warrant does not establish "purposeful availment" for the purposes of personal jurisdiction. <u>Poteat v. Gibson</u>, TDC-17-1903, 2018 WL 6413300, at *4 (D. Md. Dec. 6, 2018) ("court that have considered the precise question at issue here—whether a court has personal jurisdiction over an out-of-state law enforcement officer based on that that officer's application for a warrant that is later executed in the forum state by local law enforcement officers—have found insufficient contacts to support personal jurisdiction."); <u>Ray v. Simon</u>, 4:07-1143-TLW-TER, 2008 WL 5412067, at *16 (D.S.C. Dec. 24, 2008) ("The only asserted contacts with the state of South Carolina were incidental to executing the plaintiff's extradition to New Jersey. . . . This contact does not provide evidence that the New Jersey defendants purposefully availed themselves of South Carolina's laws and/or privileges."), <u>aff'd</u>, 330 F. App'x 424 (4th Cir. 2009); <u>Wright v. Linhardt</u>, No. CV 98-1555-ST, 2000 WL 92810, at *9 (D. Or. Jan. 18, 2000) (finding no personal jurisdiction in Oregon over AUSA in Louisiana) ("Further, it would be unreasonable to exercise personal jurisdiction over a prosecutor when, while fulfilling his duty to fully prosecute suspected criminals, he obtained extradition of a defendant back to the proper jurisdiction based on discussions with a prosecutor from another jurisdiction where the defendant was found. Otherwise, all discussions between

prosecutors attempting to obtain extradition or information about a defendant would satisfy personal jurisdiction requirements in a foreign jurisdiction in a subsequent civil action.").

Considering all of this, the Court cannot exercise personal jurisdiction over each of the Federal Defendants in their individual capacity. As a result, the undersigned respectfully recommends the Federal Defendants' Motion to Dismiss for lack of personal jurisdiction be granted.

### E. Defendant Harrison's Motion to Dismiss for Lack of Personal Jurisdiction

This is the second time that Plaintiff has brought an action in this District against Defendant Harrison where the crux of the Complaint is that Defendant Harrison committed legal malpractice during his representation of Plaintiff in the criminal proceeding in Hawaii. After extensive briefing on the issue, Magistrate Judge David C. Keesler has already determined that this Court lacked personal jurisdiction over Defendant Harrison. See Hubbard v. Harrison, No. 3:22-CV-303-RJC-DCK, 2023 WL 5604198 (W.D.N.C. Aug. 4, 2023). Then on August 29, 2023, U.S. District Judge Robert J. Conrad adopted Magistrate Judge Keesler's Memorandum and Recommendation "in all respects." Hubbard v. Harrison, 2023 WL 5604135 (W.D.N.C. Aug. 29, 2023). Nothing has changed that would permit this Court to reverse course and now assert personal jurisdiction over Defendant Harrison.

Indeed, Plaintiff's Amended Complaint falls short of alleging sufficient contacts necessary to establish jurisdiction. Plaintiff has attempted to resurrect the issue with a purported "conspiracy theory of jurisdiction." This too falls short. Plaintiff attempts to tie Defendant Harrison to the arrest in North Carolina by stating in a conclusory fashion that Defendant Harrison was part of the conspiracy. But as Defendant Harrison notes, Plaintiff's own Amended Complaint states that Defendant Harrison became involved in the alleged conspiracy in August 2015, almost three years

after Plaintiff's initial Indictment, undermining Plaintiff's own argument.  (Doc. No. 12 ¶ 21).  For these reasons, Plaintiff has not met his burden to show personal jurisdiction exists over Defendant Harrison.

Accordingly, the undersigned respectfully recommends that Defendant Harrison's Motion to Dismiss for lack of personal jurisdiction be <u>granted</u>.

### F.  Federal Defendants' Motion to Dismiss for Insufficient Service of Process[4]

The Court will now address the Federal Defendants' Motion to Dismiss for Insufficient Service of Process as it relates to the Federal Defendants.  Where a plaintiff sues a defendant in their official capacity, the plaintiff effectively sues the entity for whom the individual works, and "the real party in interest is the entity."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  Therefore, though Plaintiff did not name the United States as a party, the Federal Defendants properly responded on behalf of the United States, including in moving to dismiss for failure to properly serve the United States under Fed. R. Civ. P. 4(i)(1).

Under the federal rules, a party seeking to serve the United States must "send a copy of [the summons and the complaint] by registered or certified mail to the Attorney General of the United States at Washington, D.C.," among other requirements.  Fed R. Civ. P. 4(i)(1)(B).  At the time of the Federal Defendants' October 19, 2023, filing, Plaintiff had not served the Attorney General as required by this rule.  (Doc. No. 18 at 31).  The Court ordered Plaintiff to cure all defects in his service of process by March 15, 2024.  (Doc. No. 31).  However, none of Plaintiff's filings have included any indication that Plaintiff even attempted to cure this defect by serving the Attorney General.  (Doc. Nos. 32 & 33).  Furthermore, the Federal Defendants' April 1st Response

---

[4] The Court need not address Defendant Harrison's other arguments because the undersigned has already found that personal jurisdiction does not exist.  Further, the Federal Defendants have raised several other arguments on the merits, but the Court will not further address these arguments given that the Court lacks jurisdiction.

included a Declaration by an employee of the U.S. Attorney's Office indicating that the Attorney General remained unserved on April 1, 2024.  (Doc. No. 35, Ex. 1).  Therefore, Plaintiff's service of the United States is defective.[5]

Additionally, the federal rules state that a plaintiff suing an officer of the United States individually also "must serve the United States."  Fed. R. Civ. P. 4(i)(3).  Plaintiff has not successfully served the United States.  Plaintiff has failed to properly serve any of the Federal Defendants, which is further reason why the Court may not exercise jurisdiction over any of them.  See Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998) ("Absent waiver or consent, a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant.") (citing Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); N.C. Gen. Stat. § 1-75.4(1)(d).  For this reason as well, the undersigned respectfully recommends that the Federal Defendants' Motion be granted.

### III.      RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that:

1.  Federal Defendants' Motion to Dismiss (Doc. No. 17) be **GRANTED**;

2.  Defendant Harrison's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 21) be **GRANTED**; and

3.  Defendant Harrison's Motion to Dismiss for Insufficient Service of Process (Doc. No. 23) be **DENIED AS MOOT**.

### IV.      TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact,

---

[5] The record also does not show proof of service by delivery of a copy of the summons and complaint to the United States Attorney in this District.  Fed. R. Civ. P. 4(i)(1)(A)(i); (Doc. No. 39).

conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to mail a copy of this Memorandum and Recommendation to pro se Plaintiff, and provide copies to counsel for Defendants, and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: August 16, 2024

Susan C. Rodriguez
United States Magistrate Judge